This is a bill filed by Maryland Chapman Mayhew as trustee for Ada B. Chapman, and Ada B. Chapman to foreclose a certain mortgage given to the trustee pursuant to a certain agreement hereinafter referred to by the defendant Everett J. Chapman, the former husband of Ada B. Chapman. The *Page 255 
mortgage covers certain property in the village of Ridgewood, the former residence of the Chapmans, which is now owned by the defendants Lorenz G. Horst and Edith Horst, his wife.
The testimony adduced at the trial before me disclosed that the defendant Everett J. Chapman, and Ada B. Chapman were married in the year 1901 and lived together as man and wife for a number of years, and had two daughters one of whom, Maryland Chapman Mayhew, now married, holds the mortgage sought to be foreclosed as trustee for her mother. On December 26th, 1926, the husband, through his then solicitors, Messrs. Butler Butler, filed a petition for divorce against the wife charging desertion. The wife then consulted Mr. Warren Dixon, Jr., and engaged him to represent her. Mrs. Chapman advised Mr. Dixon, as he testified before me, "she was only interested in the question of her support; she didn't care whether they were divorced or not," and "she was past the age where she was interested in whether she was divorced or whether her husband was either, but she was very much interested in whether or not she was going to be taken care of financially during the balance of her life." The wife testified before me that she was, at the time of the suit for divorce, something over fifty years of age. A notice with a petition annexed was filed on behalf of the wife denying the alleged desertion and praying for alimony pendente lite and counsel fees, and a copy was served upon Messrs. Butler Butler. Thereafter numerous conferences were had between the parties and their respective solicitors and some correspondence, which was introduced in evidence, passed back and forth between the solicitors with the result that sometime thereafter at a conference at the home in Ridgewood some form of agreement was reached of which Mr. Dixon made lead pencil notations. This memorandum has been offered in evidence. Thereafter on the 9th day of March, 1927, a complete agreement was entered into providing for the payment to the wife of the sum of $600 per year in equal monthly installments of $50 each; providing that a bond and mortgage (which is sought to be *Page 256 
foreclosed) on the Ridgewood home be given in the sum of $7,500 to secure those payments; providing that after the expiration of one year the husband could cancel the mortgage, bond and agreement by paying to the wife the face value of the mortgage in cash; providing for the releasing of any dower interest the wife might have had; and providing for the acceptance by the wife of the sum of $600 per year in full for her maintenance and support during the life of the agreement. This agreement reserved to the wife the right to foreclose the mortgage at any time by reason of the husband's default in the payments. On the same day that this agreement was executed the bond and mortgage in question were also executed; these were duly recorded in the Bergen county clerk's office.
Thereafter the divorce case came on for hearing and the wife allowed the husband to take a decree by default because, she testified, "I was no longer interested," and sometime after 1929, when the divorce was made absolute, the husband remarried.
In compliance with the agreement the husband continued to pay to the wife the stipulated sum of $50 each month until the month of March, 1933, at which time he defaulted. The wife thereupon elected under the agreement that the mortgage become due and payable and shortly thereafter, through the trustee, filed this bill to foreclose. The husband-defendant and his present wife on February 11th, 1933, conveyed the property under foreclosure here to the defendant Lorenz G. Horst, who resides in Long Island. This deed was not recorded until May 2d 1933, some time after the default had occurred.
It is urged by counsel for the defendants that the action is not a foreclosure action, but in reality a suit to recover on a separation agreement. The law of this state is entirely too well settled to require the citation of any authorities, that an agreement by a husband to support his wife will be enforced in a suit in the court of equity for specific performance.
Counsel for the defendants further contends that the decree of divorce obtained by the husband terminates his liability *Page 257 
under the separation agreement and cites the cases of Thomas v.Thomas, 104 N.J. Eq. 607; Whittle v. Schlemm, 94 N.J. Law 112;Stern v. Stern, 112 N.J. Eq. 8, and others. Counsel loses sight of the fact that in all of these cases the question involved was misconduct on the part of the wife subsequent to the making of the agreement. It is true that separation agreements, as a general rule, are terminated by the husband's subsequent decree of divorce, and this is under the theory that an agreement for separate support is in consideration of the future chastity of the wife. But in the instant case we have an entirely different situation which distinguishes it from any of the cases cited. There has been no charge of misconduct on the part of the wife since the making of the agreement, and this very agreement was precipitated by the wife's filing of a petition and notice for alimony pendente lite and counsel fees, after the suit for divorce had been instituted by the husband. The evidence clearly shows that at the time the agreement was entered into the parties had in mind a lump sum settlement in lieu of alimony, the wife demanding at least $8,500 in cash and the husband tendering considerably less conditioned on his being able to sell the property, and it appeared from the testimony that a contract for the sale of the property had been made, and certain advances on the purchase price had been made, but the purchaser defaulted and left his advances because he said, "my wife refused to live there and I had to give it up." This idea of a lump sum settlement is further borne out by the letters in evidence and the testimony of Mr. Dixon. In the letter of February 11th, 1927, from Mr. Dixon to the husband's counsel, which was offered by the defendant, he said, "it seems that unless Mr. Chapman is willing to make a cash settlement of $8,500 we shall be unable to reach a settlement in the matter. It seems, therefore, that we shall have to proceed as originally intended and apply for alimony pendente lite and counsel fees. Unless you have done so in the meantime, will you kindly send me a stipulation extending time to answer, as per our conversation of several weeks ago." Another of Mr. Dixon's *Page 258 
letters to the husband's counsel indicates clearly that the wife had in mind an income sufficient to enable her to support herself in meagre circumstances for the balance of her lifetime. He again reiterated that unless settlement was soon arrived at it would be necessary to go ahead with the application. Instead of this lump sum agreement the agreemen in question was adopted, and the mortgage given as a guarantee. There can be no question that if such a lump sum settlement had been arrived at, the husband would have had no right, after obtaining a decree for divorce, to sue for the recovery of the moneys so paid, and in my judgment he is not now entitled to an accounting of any sums alleged to have been paid after the divorce.
In addition, it is my judgment that the husband has, by continuing to pay to his wife the sums called for under the agreement from the time of the divorce until March of 1933, ratified in all respects the agreement between the parties and is in laches in his attempt to nullify it now.
The conveyance to the defendant Horst and his wife was made in February, 1933, one month before the default, and it seems to be under suspicious circumstances. The mortgage was properly recorded about six years before this conveyance by Chapman to Horst, and he is charged, if he did not have actual knowledge, with constructive knowledge and took subject to it. Spielmann
v. Kliest, 36 N.J. Eq. 199.
I am satisfied from the evidence produced that the mortgage should be foreclosed and will advise a decree accordingly. *Page 259